2016-2647

In The
# United States Court of Appeals
For The Federal Circuit

**AIA AMERICA, INC., fka Alzheimer's Institute of America, Inc.,**

*Plaintiff – Appellant,*

v.

**AVID RADIOPHARMACEUTICALS,**

*Defendant – Appellee,*

**THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES,**

*Defendants.*

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA IN CASE NO. 2:10-cv-06908-TJS, JUDGE TIMOTHY J. SAVAGE.**

## BRIEF OF APPELLANT

**Peter Buckley**
**FOX ROTHSCHILD, LLP**
**2000 Market Street, 20th Floor**
**Philadelphia, Pennsylvania 19103**
**(215) 299-2854**
**pbuckley@foxrothschild.com**

***Counsel for Appellant***

THE LEX GROUP[DC] ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C. 20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

# CERTIFICATE OF INTEREST

Counsel for AIA America, Inc. ("AIA") certifies the following:

1. The full name of every party or amicus represented by me is:

   AIA America, Inc., fka Alzheimer's Institute of America, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   None.

3. The parent corporations and publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Bryan Cave LLP (Ameer Gado, Benjamin Sodey, Barrie Goldman, Lee Marshall) and Stradley Ronon Stevens & Young LLP (Keith Dutill, Joseph McHale).

November 15, 2016

/s/ Peter C. Buckley
Peter C. Buckley

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ........ i

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iv

STATEMENT OF RELATED CASES ........ vi

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 3

A. AIA Files An Infringement Action Against Avid Involving Patents Related To The "Swedish Mutation;" After A Bifurcated Jury Trial, The Court Determines That AIA Lacks Standing ........ 3

B. Avid Seeks Exceptional Case Sanctions; AIA Offers Evidence Of Its Good Faith And Points Out That The Jury Never Made Findings Regarding An Alleged Conspiracy Or Intent To Deceive ........ 4

C. The District Court Makes Additional Findings Regarding AIA's Knowledge And Intent Before Declaring The Case Exceptional And Awarding Attorney's Fees Under 35 U.S.C. § 285 ........ 8

SUMMARY OF THE ARGUMENT ........ 13

ARGUMENT ........ 15

A. *Door-Master* and *Jurgens* Do Not Authorize The Additional Findings Made By The District Court And Relied Upon To Support The Exceptional Case Sanction ........ 16

B. The "Unusual Posture" Of The Exceptional Case Determination Precluded Consideration Of The Totality Of The Circumstances And Violated AIA's Due Process Rights ........................................ 19

1. The District Court abused its discretion by not considering the totality of circumstances relevant to the exceptional case determination ........................................ 20

2. The process employed violated AIA's due process rights........ 22

C. AIA's Intent, State Of Mind, And Culpability Should Have Been Decided By The Jury, Not The Court ........................................ 25

CONCLUSION ........................................ 27

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adv. Magnetic Closures, Inc. v. Rome Fastener Corp.*,
607 F.3d 817 (Fed. Cir. 2010) ....................................................23

*Alzheimer's Inst. of Am., Inc. v. Avid Radiopharmaceuticals, Inc.*,
2011 WL 3875341 (E.D. Pa. Aug. 31, 2011), *aff'd*,
560 Fed. Appx. 996 (Fed. Cir. 2014) ....................................3, 8, 9

*Alzheimer's Institute of America, Inc. v. Avid Radiopharmaceuticals, Inc.*,
560 Fed. Appx. 996 (Fed. Cir. 2014), *reh'g and reh'g en banc den.*
(July 2, 2014) ....................................................4

*Alzheimer's Institute of America, Inc. v. Avid Radiopharmaceuticals, Inc.*,
No. 10-cv-6908 (E.D. Pa.) ....................................................*passim*

*Brooktree Corp. v. Adv. Micro Devices, Inc.*,
977 F.2d 1555 (Fed. Cir. 1992), *reh'g den.* (Jan. 4, 1993)..........................25

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
532 U.S. 424 (2001)....................................................15

*Dashner v. Reidy*,
197 Fed. Appx. 127 (3d Cir. 2006)....................................................25

*Door-Master Corp. v. Yorktowne, Inc.*,
256 F.3d 1308 (Fed. Cir. 2001), *reh'g den.* (Aug. 22, 2001)................*passim*

*DSM Desotech Inc. v. 3d Systems Corp.*,
2008 WL 4812440 (N.D. Ill. 2008)....................................................21

*EON Corp. IP Holdings, LLC v. FLO TV Inc.*,
2014 WL 2196418 (D. Del. May 27, 2014) ....................................................22

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Tech., Ltd.*,
292 F.3d 1363 (Fed. Cir. 2002) ....................................................24

*Highmark, Inc. v. Allcare Health Mgt. Sys., Inc.*,
134 S. Ct. 1744 (2014) .......... 15

*Jurgens v. CBK, Ltd.*,
80 F.3d 1566 (Fed. Cir. 1996) .......... *passim*

*Nat'l Presto Indus., Inc. v. West Bend Co.*,
76 F.3d 1185 (Fed. Cir. 1996) .......... 25

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) .......... 20, 21

*Ortho Pharma. Corp. v. Smith*,
959 F.2d 936 (Fed. Cir. 1992) .......... 22

*W.L. Gore & Associates, Inc. v. Oak Materials Group, Inc.*,
424 F. Supp. 700 (D.Del. 1976) .......... 23

*Zambrana Santos v. Banco Santander de P.R.*,
363 F. Supp. 2d 56 (D. P.R. 2005) .......... 21

**STATUTES**

28 U.S.C. § 1295(a)(1) .......... 1

28 U.S.C. § 1331 .......... 1

35 U.S.C. § 285 .......... 4, 8, 23

## STATEMENT OF RELATED CASES

This case forms the basis for an exceptional case finding and an award of attorney's fees in *Alzheimer's Institute of America, Inc. v. Eli Lilly & Company, Inc., et al.*, No. 10-cv-0482 (N.D. Cal.), currently on appeal to this Court in a companion case (No. 16-2094). This Court previously affirmed a judgment against AIA on the underlying merits of this case in *Alzheimer's Institute of America, Inc. v. Avid Radiopharmaceuticals, Inc.*, 560 Fed.Appx. 996 (Fed. Cir. 2014).

Pending motions for attorney's fees in *Alzheimer's Institute of America, Inc. v. Comentis, Inc. and Oklahoma Medical Research Foundation,* No. CIV-09-1366-F (W.D. Okla.), may be affected by the Court's decision in the pending appeal because the defendants in that action asserted that collateral estoppel applies there based on the District Court's exceptional case determination here.

# JURISDICTIONAL STATEMENT

The District Court asserted jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

On August 17, 2016, the District Court entered an Order entering judgment against AIA for Avid's attorney's fees—the final order from which AIA appeals. Appx41. Previously, the District Court entered an Order granting Avid's attorney's fee motions on March 30, 2015. Appx35.

AIA timely appealed on September 14, 2016. Appx96.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred by making its own findings about AIA's knowledge and intent after a bifurcated trial on standing during which the jury was never asked to consider AIA's state of mind, intent, or culpability, and the Court excluded evidence relevant to those issues as beyond the limited scope of that proceeding.

2. Whether the District Court abused its discretion by not considering the totality of the circumstances relevant to the exceptional case determination or violated AIA's right to due process by imposing a sanction predicated on a bad faith finding that went beyond the limited scope of the bifurcated trial.

3. Whether the District Court erred by making findings about AIA's state of mind, intent and culpability when the Seventh Amendment required those factual issues to be decided first by the jury.

## STATEMENT OF THE CASE

### A. AIA Files An Infringement Action Against Avid Involving Patents Related To The "Swedish Mutation;" After A Bifurcated Jury Trial, The Court Determines That AIA Lacks Standing.

AIA filed this patent infringement action in the Eastern District of Pennsylvania. Appx51. The District Court ordered targeted discovery on AIA's standing and ultimately held a jury trial on that limited issue before ever addressing AIA's infringement allegations. Appx30, Appx1102.

The District Court succinctly summarized the standing issue at the outset of its decision denying the parties' cross-motions for summary judgment:

> The ***threshold*** issue is whether the plaintiff, the assignee of the patents in suit, has standing to prosecute this patent infringement action. Unless the plaintiff owns the patents, it has no standing. The defendants contend that the assignor of the patents was not the sole inventor of the invention; and, even if he was, ownership of the invention vested in his university-employer by operation of Florida law. If the defendants are correct, the plaintiff lacks standing.

*Alzheimer's Inst. of Am., Inc. v. Avid Radiopharmaceuticals, Inc.*, 2011 WL 3875341, *1 (E.D. Pa. Aug. 31, 2011), *aff'd*, 560 Fed. Appx. 996 (Fed. Cir. 2014). At the outset of trial, the Court once again confirmed the limited scope of the inquiry, telling the jurors:

> So in the end you must decide two issues. First, did USF knowingly and intentionally assign its ownership rights in the Swedish mutation invention. Second, was Michael

> Mullan the only inventor of the Swedish mutation invention or was John Hardy a co-inventor?

Appx1102. And, once again, in charging the jury, the Court explained the narrow scope of their deliberations:

> In the end, you must decide two issues. First, was Michael Mullan the only inventor of the Swedish mutation or was John Hardy a co-inventor? Second, did USF knowingly and intentionally waive its ownership rights in the Swedish mutation invention?

Appx3824-3825. The Court's instructions did not involve any reference to AIA's intent, state of mind or culpability. Appx3823-3832.

After an eight-day trial, the jury completed a three-question verdict slip amounting to a decision that AIA lacked standing to assert the validity of the patents at issue and forming the basis for entry of judgment as a matter of law in favor of the defendants. Appx30. AIA appealed the judgment to this Court, which summarily affirmed AIA's lack of standing. *Alzheimer's Inst. of Am., Inc. v. Avid Radiopharmaceuticals, Inc.*, 560 Fed. Appx. 996 (Fed. Cir. 2014).

### B. Avid Seeks Exceptional Case Sanctions; AIA Offers Evidence Of Its Good Faith And Points Out That The Jury Never Made Findings Regarding An Alleged Conspiracy Or Intent To Deceive.

When the action returned to the District Court, Avid sought an award of attorney's fees under Section 285 of the Patent Act, which provides that the prevailing party may recover reasonable attorney's fees in an "exceptional case." Appx3853-3863. Avid argued that AIA procured the patents through conspiracy

and bad faith and that AIA deliberately mislead the University of South Florida ("USF") into granting a waiver of its rights. Appx3853-3863. AIA opposed the exceptional case determination. Appx4078-4095. AIA argued that "[t]he jury was not asked to—and did not—make any findings with respect to an alleged conspiracy or intent to deceive." Appx4082. And AIA pointed out that, "[h]ad Avid … wanted factual findings with respect to these issues, it should have objected to the Court's special verdict form and requested additional interrogatories be submitted to the jury." Appx4082.

With respect to Avid's allegation that AIA procured the patents through conspiracy and bad faith, AIA emphasized that "the jury … made no finding that AIA intentionally misled either the PTO or USF," and explained that, "had that issue actually been tried, AIA would have presented evidence that Dr. Mullan and AIA acted on the advice of counsel with respect to inventorship of the patents."[1] Appx4082. AIA highlighted Dr. Mullan's testimony—that he "discussed inventorship with the attorneys who prosecuted the patent applications" and that they "informed [him] that they believed he was the sole inventor." Appx4082. And, while evidence of reliance on counsel was not part of the trial record, AIA

[1] Had it been relevant to the issues being tried, AIA would have also presented evidence of its reliance on counsel in filing the action and their contingency fee relationship—both of which undermine the Court's conclusions regarding AIA's intent, state of mind and culpability.

directed the District Court to ample evidence supporting AIA's good faith belief that Dr. Mullan was the sole inventor of the Swedish mutation including evidence:

- that Dr. Mullan performed or directed the key experiments leading to the Swedish mutation discovery without any communication or input from Dr. John Hardy ("Dr. Hardy"), Appx4084;
- that Dr. Hardy expressed in writing on several occasions that he was not an inventor of the Swedish mutation, including this direct denial of co-inventorship, Appx4085:

> Your source is correct: indeed, another mutation has been found by Dr. Mullan and Ms. Crawford in Florida. Since I did none of the work and am not a co-author on the paper, I cannot send it to you, since it is not mine to send. I can assure you (and ATHENA) that none of the work reported in the paper was carried out here at St. Mary's. Mr. Houlden advised the Swedish group on how to run the genetic marker and did some work here: however, all this work was wasted because the Swedes had made both diagnostic and tube labelling errors completely nullifying the genetic analysis (in the experiments done here, the amyloid gene did not coinherit with the disease). Fortunately, Dr. Mullan spotted the errors, and the experiments which were reported were successfully carried out in Sweden with his guidance: the key experiments, however, were done by Dr. Mullan and Ms. Crawford in Florida.

- that Dr. Mullan submitted a declaration to the Patent Office identifying himself as the sole inventor, Appx4085; and
- Dr. Mullan's testimony that—despite 20 years of opportunity—Dr. Hardy never expressed a claim to co-inventorship, Appx4083.

In addition, AIA argued that it "was entitled to rely on the Federal Circuit's standard for inventorship with respect to genetic inventions, and the undisputed fact that Dr. Hardy had no idea about the location or structure of the mutation

when he sent the DNA to Florida." Appx4086. AIA pointed out that not all of Avid's theories required a finding of conspiracy and that, "while the jury was permitted to weigh the circumstantial evidence of the alleged conspiracy, it made no finding of intent to deceive the Patent Office" because "[n]o such issue was on trial." Appx4087.

With respect to Avid's allegation that AIA acted with an intent to deceive USF into waiving its rights in the invention, AIA again emphasized that Avid "advanced alternative arguments that could have resulted in the jury's verdict without any implication of bad faith" and that the "jury made no finding that AIA intended to deceive USF." Appx4087. AIA pointed to Dr. Mullan's disclosure of "something new" prior to USF's May 4, 1992 waiver letter and to a specific disclosure of the Swedish Mutation in 1993 during the course of a subsequent investigation, arguing that neither was consistent with an intent to deceive USF—especially in view of USF's years of subsequent silence. Appx4087-4088. AIA highlighted that "[n]othing in the jury instructions required a determination that AIA acted in bad faith in order for the jury to find in [Avid's] favor" and that Avid's deliberate non-disclosure argument "is not only false, but is also not a finding that the jury either expressly or implicitly made." Appx4088.

### C. The District Court Makes Additional Findings Regarding AIA's Knowledge And Intent Before Declaring The Case Exceptional And Awarding Attorney's Fees Under 35 U.S.C. § 285.

After briefing but without a hearing, the District Court issued an opinion, declaring the case exceptional, awarding attorney's fees, and appointing a special master to make recommendations on the amount of fees to be awarded. Appx29-34. The special master's December 22, 2015 report recommended an award of $3,943,317.70 in favor of Avid (a 43% reduction from the amount requested). Appx37. On August 17, 2016, the District Court entered judgment against AIA and in favor of Avid in the amount of the special master's recommendation. Appx41.

The jury was asked to consider three discrete factual issues related to AIA's standing—one about ownership, and two on inventorship. **First**, because—as a matter of Florida law—ownership of inventions discovered by a state employee vests and remains with the employer absent an informed waiver, the jury was asked to determine whether USF waived its rights to the Swedish mutation invention discovered by researcher Dr. Michael Mullan ("Dr. Mullan"). *Alzheimer's Inst. of Am., Inc.*, 2011 WL 3875341 at *1. By answering the following question, the jury found that USF did not knowingly and intentionally waive its ownership rights:

**Question No. 1.**

MICHAEL E.
By______

Did the University of South Florida knowingly and intentionally waive its ownership rights to the Swedish mutation invention?

Yes _____ No _X_

Appx30, Appx3834. **Next**, because proving non-joinder of a co-inventor invalidates a patent, the jury was asked to determine whether Dr. Mullan was the sole inventor and, if not, whether his former Imperial College colleague Dr. Hardy co-invented the Swedish mutation invention. *Alzheimer's Inst. of Am., Inc.*, 2011 WL 3875341 at *6. The jury ruled against AIA on the inventorship issue, completing the verdict slip this way:

**Question No. 2.**

Was Michael Mullan the sole inventor of the Swedish mutation invention?

Yes _____ No _X_

If your answer is yes, your deliberations are complete.

If your answer is no, proceed to answer Question 3.

**Question No. 3.**

Was John Hardy a co-inventor of the Swedish mutation invention?

Yes _X_ No _____

Appx30, Appx3834. The District Court began its exceptional case analysis by reviewing the jury's factual findings, but the Court recognized that additional

findings would be necessary to support an exceptional case determination. Appx30-34.

Relying on *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1314-15 (Fed. Cir. 2001) (citing *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996)), the Court said that "[w]hen determining whether a case is exceptional, a court may reweigh evidence the jury has already considered; but, it cannot substitute its findings for the jury's." Appx30. Then, on the basis of certain evidence presented to the jury during the bifurcated trial on standing, the District Court made additional findings of fact. Appx33-34. The Court found that AIA's principal Ronald Sexton ("Mr. Sexton"), "Hardy and Mullan conspired to misrepresent the true inventorship of the Swedish mutation inventions in an effort to ensure that ownership of those inventions could not be claimed by Imperial College. Appx33. And the Court found that "they intentionally hid the discovery of the mutation from USF to avoid its claiming rights in the inventions." Appx33. These additional findings, the District Court said (again quoting *Door-Master*), "form a sufficient basis … to exercise our discretion in deciding to award attorney's fees" because they are "***not inconsistent*** with the jury's findings." Appx33, emphasis added.

But the District Court was not done making additional findings to support its award of exceptional case sanctions. The Court went on to say that "AIA ***knew***,

when it brought this action, that it was not the legal owner of the patent" and that "[i]t devised the scheme to avoid the agreements Hardy and Mullan had with Imperial College and USF." Appx33, emphasis added. The Court also found that AIA "***knew*** that Hardy was a co-inventor who should have been disclosed to the PTO" and that, "[d]espite this ***knowledge***, [AIA] asserted that it was the rightful owner of the patent and brought this infringement action." Appx33, emphasis added. Referring to its findings about what AIA knew and when, the District Court concluded that AIA's "conduct undoubtedly constitutes bad faith" and thus, "on factual and legal grounds, [the] action was objectively unreasonable." Appx34. Moreover, the District Court went on, "[t]he deception, the planning, the execution of the scheme and the motivation of AIA, Sexton, Mullan and Hardy were hardly common or ordinary … their conduct was rare and beyond common decency … motivated by ego and greed." Appx34.

While the District Court found that AIA knew that it lacked standing when it filed suit and that AIA's bad faith made the case "exceptional," the Court balanced these findings by noting that "[t]here are equities on both sides." Appx34. Referring to the bifurcated nature of the proceedings and the fact that "[t]he jury did not determine that the defendants did not infringe the patent," the District *Court* noted that, "given the ***unusual posture of this case***, the defendants should not be rewarded for acts of infringement that may have occurred." Appx34,

emphasis added. Accordingly, while the Court granted the defendants' motions and awarded attorney's fees, it stressed that it would "scrutinize the bills closely in light of [these] equitable concerns." Appx34.

## SUMMARY OF THE ARGUMENT

The District Court's $3.9 million exceptional case sanction is the result of a flawed process that should not have been used to determine AIA's intent, state of mind and culpability. The proceedings below did not involve a full trial on the merits. Rather, the District Court recognized that AIA's standing presented a threshold issue and so it conducted a trial limited to the issues of ownership and inventorship early in the proceedings. The jury made three findings supporting the Court's judgment that AIA lacked standing, but the jury was never asked to pass on AIA's *bona fides*. Indeed, the District Court excluded evidence related to AIA's good faith because issues such as reliance on counsel and AIA's understanding of the complex standards that apply to inventorship of a nucleic acid invention and informed waiver of ownership rights were beyond the scope of the bifurcated trial on standing.

The District Court misinterpreted *Door-Master* and *Jurgens* as allowing the trial court to make additional factual findings so long as they were "not inconsistent" with the jury's findings. Contrary to its interpretation, neither case authorized the District C*ourt* to reach its own conclusions when AIA's intent, state of mind, and culpability were never even at issue in the bifurcated trial—especially when the Court excluded evidence on the topic.

The "unusual posture" of the exceptional case determination precluded consideration of the totality of circumstances relevant to the imposition of sanctions and, moreover, violated AIA's due process rights. The District Court decided that AIA acted in bad faith on the basis of a record created for another, inconsistent purpose long before the defendants ever sought sanctions. AIA should have been afforded an opportunity to show that it relied on counsel and the scientists to determine inventorship and that USF's repeated disclaimers justified its belief that the university's claim to ownership had been waived. The District Court's findings denied AIA that opportunity and, moreover, violated its Seventh Amendment right to have a jury decide when reasonable minds could have drawn different conclusions.

## ARGUMENT

The District Court's exceptional case determination is reviewed on appeal for abuse of discretion; however, that "standard does not preclude an appellate court's correction of a … legal or factual error: [a] district would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Highmark, Inc. v. Allcare Health Mgt. Sys., Inc.*, 134 S. Ct. 1744, 1748, n.2 (2014). When the error of law relates to a constitutional issue such as due process, review is *de novo*. *See, e.g., Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 430 (2001).

The District Court drew authority for the factual findings supporting its exceptional case determination from an erroneous view of *Door Master* and *Jurgens*, precluding consideration of the totality of relevant circumstances and violating AIA's due process rights by deciding knowledge and intent on the record of a bifurcated trial directed toward other issues. Because reasonable minds could disagree about whether AIA knew that it lacked standing but filed anyway in bad faith, these issues should have been submitted to a jury and not decided by the District Court.

### A. ***Door-Master* and *Jurgens* Do Not Authorize The Additional Findings Made By The District Court And Relied Upon To Support The Exceptional Case Sanction.**

The District Court misinterpreted *Door-Master*, which did not authorize it to make findings about AIA's knowledge and intent because those issues were beyond the scope of the bifurcated trial and thus never considered by the jury. *Door-Master* and the case that first articulated the relevant principle, *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996), involved full trials on the merits, jury findings of willful infringement, and courts that nevertheless decided not to impose exceptional case sanctions because of the closeness of the case. Those circumstances differ significantly from the circumstances here. The Court's out-of-context paraphrasing of *Door-Master* changed the meaning of the relevant principle and led to an error of law that must be corrected. Appx33.

The jury in *Door-Master* found that the defendant willfully infringed Door-Master's inset door and frame combination patent. 256 F.3d at 1312. Nevertheless, "[b]ased on its observations" during a full trial on the merits, the trial court declined to award Door-Master its attorney's fees. *Id.* at 1314. The Court found that the case presented a "close call in several important respects" and "concurred with [the defendant's] assertions that it had made an investigation of the [relevant] patent, even if that investigation ultimately proved to be insufficient." *Id.* In affirming, this Court acknowledged that the trial court "may

have reweighed some evidence that the jury already considered," but, citing *Jurgens*, explained that reweighing of evidence is permitted when deciding "whether the case is exceptional so long as the court's findings do not conflict with the jury's findings." *Id.*

*Jurgens* also involved a jury finding of willful infringement; however, unlike *Door-Master*, the jury also made a specific finding of bad faith by the defendant infringer. 80 F.3d at 1573. The trial court declined to award attorney's fees under Section 285 "because the Jurgenses did not clearly and visibly mark their decoys to show that they were patented and because the Defendants immediately sought the advice of an experienced attorney" after there was an infringement allegation. *Id.* at 1572. The presence of a "contrary jury finding" led this Court to reverse and set forth, without citation, the following principle:

> Although a trial court many times has discretion to weigh the closeness of the case and the scope of the infringer's investigation in deciding whether to increase a damages award, it does not have discretion to reweigh this evidence once the matter has been decided by the jury and the court finds evidence sufficient to support the jury determination.

*Id.* at 1572.

*Door-Master* omitted the second half of the sentence when it quoted *Jurgens*, and so, when the District Court paraphrased *Door-Master*, the principle

clearly articulated by this Court in 1996 was transformed to include a confusing double-negative in 2015:

> Because these findings are *not inconsistent* with the jury findings, they form a sufficient basis for us to exercise our discretion in deciding to award attorney's fees.

Appx33, emphasis added. The transformation was significant, altering not only the context but also the application of the *Jurgens* principle. *Jurgens* reigned in a trial court whose findings conflicted with those of the jury. The District Court cited the principle as authorizing affirmative findings on issues not even addressed by the jury and moreover beyond the scope of the bifurcated trial on standing. *Jurgens* said the trial court lacks discretion to reweigh evidence once it finds the evidence sufficient to support the verdict. The District Court suggested that a trial court can make its own findings so long as they are "not inconsistent" with the jury's findings. In short, the District Court used a principle originally designed to limit a trial court's fact-finding and avoid inconsistencies with a jury's determinations as authority to interpret facts and reach conclusions on issues never even presented to the jury.

It is one thing to empower a court to reweigh the closeness of an infringement finding against a defendant or to pass on bad faith after the related issue of willful infringement has been decided by the jury. The issues overlap, can be decided on the same record, and do not put litigants in a strategic conundrum.

The defendant infringer has the same motive and opportunity to defend the trial on the merits as it does to defend the exceptional case finding. It is quite another thing to conduct a bifurcated trial restricted to ownership and inventorship and then decide what the plaintiff knew about its rights and whether it filed suit in good faith on the same limited record—especially when evidence relevant to the plaintiff's state of mind was specifically excluded from the trial or strategically out-of-place. Findings concerning knowledge and bad faith are not subsumed within a determination of ownership or inventorship; indeed, it is possible to lack standing, but not to know it at the time of filing and thus proceed in good faith. And, to require a plaintiff to defend its *bona fides* while simultaneously trying to prove standing places the plaintiff in an untenable position—where it must defend against an as-yet-unfiled exceptional case motion while also trying to persuade the jury that it has the right to sue. That is precisely what the District Court did, but without any prior notice to AIA.

### B. <u>The "Unusual Posture" Of The Exceptional Case Determination Precluded Consideration Of The Totality Of The Circumstances And Violated AIA's Due Process Rights.</u>

The District Court acknowledged the "unusual posture" of its exceptional case determination arising from the bifurcated nature of the proceedings. Appx34. The Court achieved certain efficiencies on the merits by focusing on the threshold issue of standing. But the Court never reached the issue of infringement and

evidence about AIA's reliance on counsel and understanding of complex legal issues—like the inventorship of a nucleic acid invention and the standard for informed waiver of ownership rights—was excluded as irrelevant to whether AIA actually possessed standing to sue. As a result, the District Court found that AIA acted in bad faith and with knowledge that it lacked standing without ever hearing AIA's side of the story. Indeed, the District Court based its findings on a record created for a more limited purpose in which evidence supporting AIA's good faith was excluded as irrelevant. And, because of the bifurcated nature of the proceedings, AIA's allegations of infringement never saw the light of trial. As a consequence, the record did not include any evidence that might have negatively impacted the Court's perception of defendant Avid—which Eli Lilly purchased for $800 million largely because of a research program in which Avid's imaging agent was tested on mice exhibiting the Swedish mutation. The District Court should not have deemed this case exceptional on such a limited record.

**1. The District Court abused its discretion by not considering the totality of circumstances relevant to the exceptional case determination.**

The Supreme Court recently reshaped the exceptional case arena in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). *Octane* made clear that "there is no precise rule or formula" to determine what is exceptional, but that the court should simply exercise its discretion "considering

the ***totality of the circumstances***." *Id.*, emphasis added. "[A]n exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* The "unusual posture" here obscured from view evidence that should have been considered in the exceptional case phase. Indeed, while the bifurcated proceedings more efficiently disposed of the underlying infringement action, they were fundamentally inconsistent with the totality of circumstances analysis required under Section 285 by *Octane*. *See, e.g., DSM Desotech Inc. v. 3d Systems Corp.*, 2008 WL 4812440, *6 (N.D. Ill. Oct. 28, 2008) ("The issue of willfulness in particular has been identified as a factor arguing against bifurcation because it is assessed according to the totality of the circumstances."); *Zambrana Santos v. Banco Santander de P.R.*, 363 F. Supp. 2d 56, 64 (D. P.R. 2005) (refusing to entertain bifurcated approach as inconsistent with "directive to consider the totality of circumstances").

The totality of circumstances relevant to the exceptional case determination involve much more than whether AIA had standing to sue. The District Court correctly considered AIA's knowledge and intent, but it did so using a limited record created for an inconsistent purpose. Among other things, AIA should have been given a forum to introduce evidence concerning its reliance on counsel and its

lay understanding that Dr. Mullan was the sole inventor of the nucleic acid invention under the relevant (but complex) legal standard and that USF had effectively disclaimed any ownership interest in the Swedish mutation through its public statements and years of inaction. *See Ortho Pharma. Corp. v. Smith*, 959 F.2d 936, 945 (Fed. Cir. 1992) (demonstrating relevance of advice of counsel to exceptional case analysis); *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, 2014 WL 2196418, *2 (D. Del. May 27, 2014) (denying exceptional case sanction while noting that "case turned on complex and evolving area of the law"). Moreover, the District Court was right when it referenced the relevance of "acts of infringement that may have occurred," but it never considered any evidence on the subject. Appx34. AIA should have been able to present some evidence to show that the "no standing" judgment absolved Avid of hundreds of millions of dollars in damages for infringement before Avid's talented legal team ever conceived of the standing defense. By rendering an exceptional case determination on such a limited and deficient record, the District Court failed to consider the "totality of the circumstances" and thus abused its discretion.

### 2. The process employed violated AIA's due process rights.

The District Court violated AIA's due process rights when it imposed the exceptional case sanction because the Court's findings—that AIA acted with knowledge and in bad faith—were based upon the record from a bifurcated trial

designed for another purpose. District courts are required "to give parties notice and a fair hearing before awarding attorney's fees." *Adv. Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 827 (Fed. Cir. 2010) (wherein the court reviewed briefs and conducted a hearing before making an exceptional case determination). Where there has been less than a full trial on the merits, disposition of a request under Section 285 may require the taking of additional evidence—including an adversary hearing—because the issues relevant to that determination have not been brought out on the record. *See W.L. Gore & Associates, Inc. v. Oak Materials Group, Inc.*, 424 F. Supp. 700, 702 (D.Del. 1976). The record was not developed to determine AIA's intent, state of mind, or culpability and so more was necessary before tagging AIA with millions of dollars in sanctions.

AIA never received notice that the bifurcated trial on standing might one day be used to assess whether the case was "exceptional," or that it should be prepared to present evidence in defense of an as-yet-unfiled motion under Section 285 while still trying to pursue damages for infringement. The District Court never conducted a hearing in the exceptional case phase and, indeed, never reopened the record from the bifurcated trial—which did not include exculpatory evidence previously excluded during that phase. Among other things, the District Court failed to consider:

- AIA's reliance on counsel (both in assessing its patent rights and in deciding to pursue litigation);
- AIA's understanding of the complex legal standards that apply to inventorship of nucleic acid inventions and informed waiver of ownership rights;
- AIA's understanding of the work performed by Dr. Mullan, Dr. Hardy, and the other scientists; and
- AIA's role in the process before the PTO.

Indeed, the District Court's preliminary findings are focused on Dr. Mullan and Dr. Hardy—the scientists at the center of the discovery and the relationships with USF and Imperial College. While these scientists were not AIA's agents, the District Court inappropriately attributed their knowledge and intent to AIA without affording AIA the opportunity to create a record distinguishing Mr. Sexton from Drs. Mullan and Hardy. *See Frank's Casing Crew & Rental Tools, Inc. v. PMR Tech., Ltd.*, 292 F.3d 1363, 1377-78 (Fed. Cir. 2002) (noting that the inequitable conduct of others can affect the property rights of innocent parties and highlighting need to distinguish among alleged bad actors when deciding to assess fees). AIA should have had the opportunity to demonstrate that it was inappropriate to charge Mr. Sexton with the scientists' knowledge and level of understanding. Because the District Court imposed sanctions for bad faith on an incomplete record created for

an incompatible purpose, they violated AIA's due process rights and therefore erred as a matter of law. *See Dashner v. Reidy*, 197 Fed.Appx. 127, 131 (3d Cir. 2006) ("When the procedure employed by the district court in imposing sanctions raises due process concerns, our review is plenary."). This Court should vacate the District Court's order and remand for an evidentiary hearing.

### C. **AIA's Intent, State Of Mind, And Culpability Should Have Been Decided By The Jury, Not The Court.**

Questions that turn on "considerations of intent, state of mind, and culpability" are questions of fact that must remain with the trier of fact. *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1193 (Fed. Cir. 1996). And, thus, "whether [an] infringer had a reasonable belief that the accused activity did not violate the law is a question of fact." *Id.* The same is true for a plaintiff's state of mind. It was for a jury, and not the District Court to determine whether AIA knowingly pursued a flawed litigation strategy. By denying Avid's cross-motion for summary judgment on standing, the District Court recognized that "reasonable minds could draw different conclusions," and thus the "questions [were] the province of the jury," not the judge. *Brooktree Corp. v. Adv. Micro Devices, Inc.*, 977 F.2d 1555, 1570 (Fed. Cir. 1992). While *Jurgens* and *Door-Master* may have permitted the District Court to reweigh the closeness of issues actually presented to and decided by the jury, there is no basis for the Court to decide whether AIA acted with scienter in the first instance. The District Court committed reversible

legal error when it became the fact-finder on issues that must first be decided by the jury. This Court should vacate the District Court's order and direct that AIA's intent, state of mind, and culpability be decided by a jury before an exceptional case determination can be made.

## CONCLUSION

The District Court's exceptional case determination and award of attorney's fees should be vacated and these proceedings remanded. AIA respectfully requests oral argument.

November 15, 2016

Respectfully submitted,

/s/ Peter C. Buckley
Peter C. Buckley
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
215-299-2854
215-299-2150 (Facsimile)
pbuckley@foxrothschild.com

Attorney for Appellant
AIA America, Inc., f/k/a
Alzheimer's Institute of America, Inc.

# ADDENDUM

# TABLE OF CONTENTS

**Addendum Page**

Memorandum Opinion of
The Honorable Timothy J. Savage
filed March 30, 2015 .......... Appx29

Order of
The Honorable Timothy J. Savage
Re: Granting Plaintiff's Motion
filed March 30, 2015 .......... Appx35

Memorandum
filed August 17, 2016 .......... Appx36

Order of
The Honorable Timothy J. Savage
filed August 17, 2016 .......... Appx40

Judgment Order before
The Honorable Timothy J. Savage
Re: Ordering Judgment in favor of Defendant
filed August 17, 2016 .......... Appx41

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALZHEIMER'S INSTITUTE OF AMERICA, INC.** | : | **CIVIL ACTION** |
| | : | **NO. 10-6908** |
| **v.** | : | |
| **AVID RADIOPHARMACEUTICALS, *et al.*** | : | |

**MEMORANDUM OPINION**

**Savage, J.** **March 30, 2015**

The defendants in this patent infringement case that resulted in a jury verdict in their favor have moved for an award of attorney's fees. Finding that this is an exceptional case entitling them to attorney's fees under 35 U.S.C. § 285, we shall grant their motions.

Section 285 of the Patent Act provides that the prevailing party may, in an exceptional case, be awarded reasonable attorney's fees. 35 U.S.C. § 285. The Act does not define "exceptional case." However, the Supreme Court has.

In *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), the Court held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Construing the statutory language according to its ordinary meaning, the Court referenced the dictionary definition of exceptional as "uncommon," "rare," or "not ordinary." *Id.* at 1756.

In conducting the exceptional case analysis, a court must exercise its discretion in light of the totality of the circumstances. *Id*. Among those factors relevant to the analysis are "frivolousness, motivation, objective unreasonableness (both in the factual and legal

components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1756, n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n.19 (1994)). This includes cases that are brought in subjective bad faith or assert exceptionally meritless claims. *Id.* at 1757.

In conducting its discretionary inquiry, the court makes its findings by a preponderance of the evidence. *Id.* at 1758. When determining whether a case is exceptional, a court may reweigh evidence the jury has already considered; but, it cannot substitute its findings for the jury's. *Door Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1314-15 (Fed. Cir. 2001) (citing *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572, (Fed. Cir. 1996)).

The jury determined that the plaintiff, Alzheimer's Institute of America, Inc. ("AIA"), was not the owner of the rights to the patent upon which it predicated this infringement action.[1] Instead, it found that the University of South Florida ("USF") had not waived its ownership rights in the Swedish mutation invention.[2] It also found that John Hardy, who was not disclosed on the patent application, was a co-inventor.

The evidence at trial amply showed that Ronald Sexton, AIA's principal, had conspired with John Hardy and Michael Mullan to defraud USF and Imperial College in London of their ownership rights in the invention. They agreed not to list Hardy as a co-

---

[1] The factual background of the case and the historical details of how the invention, the Swedish mutation, was conceived and developed are recited in our summary judgment memorandum opinion ruling on Avid Radiopharmaceuticals ("Avid") and The Trustees of the University of Pennsylvania's ("Penn") motion challenging AIA's standing to bring this infringement action, *Alzheimer's Inst. of Am., Inc. v. Avid Radiopharmaceuticals*, No. 10-6908, 2011 WL 3875341 (E.D. Pa. Aug. 31, 2011), and the memorandum opinion ruling on AIA's post-verdict motion. 952 F. Supp. 2d 740 (E.D. Pa. July 1, 2013). Because the parties are familiar with those facts and the history, we shall not reiterate them.

[2] On summary judgment, we determined that the ownership rights to the invention vested in USF by operation of law. 2011 WL 3875341, at *8, *11.

inventor on the patent application. Thus, Mullan was listed as the sole inventor on the patent application and assigned the patent rights to AIA.

The jury found that Mullan was not the sole inventor of the Swedish mutation invention and that Hardy was a co-inventor. The evidence clearly demonstrated that Hardy had made a significant contribution to the invention, and that both Mullan and Hardy had collaborated to discover the Swedish mutation. As we previously observed, there was abundant evidence that Hardy and Mullan had been working together on the project to identify the Swedish mutation before and at the time of conception. When Hardy arranged to have the DNA sent to Mullan in Florida for the sequencing, the final step in the process, he was not a mere messenger or deliveryman. Hardy was directing the process and substantially contributed to the invention.

Dr. Houlden testified that Hardy had concluded that the GT12 data suggested a mutation on the APP gene.[3] He stated that Hardy had told him to send DNA to Mullan to be sequenced in Florida.[4] Houlden knew that Mullan and Hardy jointly wanted the new mutations discovered in Florida rather than in London.[5]

Dr. Duff also corroborated Hardy's testimony. She testified that although Hardy and Mullan knew there was a genetic abnormality in the Swedish families when they were in London, they deliberately held off on formally identifying the sequence mutations until they got to Florida.[6]

---

[3] 4/18/12 Tr. at 19:9-24, 110:10-19 (Houlden).

[4] 4/17/12 Tr. at 79:17-23, 97:3-5 (Hardy); 4/18/12 Tr. at 21:5-13 (Houlden); 159:16-20 (Goate).

[5] 4/18/12 Tr. at 32:21-23, 100:5-6 (Houlden).

[6] 4/18/12 Tr. at 206:16-207:6, 224:10-19, 232:4-7 (Duff).

Consistent with the plan to have the discovery of the mutation occur in Florida instead of the United Kingdom, Hardy had DNA samples sent to Mullan for sequencing. Having the sequencing done in Florida rather than in London was a step in furtherance of the conspiracy to avoid the inventions becoming the property of Imperial College or Athena. At that point, Hardy and Mullan were working together on the project. They were both attempting to deceive Imperial College by having the sequencing done in Florida.

To avoid any claim of ownership by USF, Mullan arranged to have the sequencing in an off-campus, private laboratory even though USF had provided Mullan and Hardy a new laboratory dedicated to Alzheimer's research. Once they had identified the Swedish mutation, Sexton, Hardy and Mullan sought USF's waiver of any rights in this discovery. They presented a "waiver letter" to USF's vice-president for research. In their successful effort to obtain his signature on the letter, they led him to believe that the work on the Swedish mutation had been substantially completed while Hardy and Mullan were at Imperial College.

In furtherance of their conspiracy to deprive USF and Imperial College of ownership rights in the invention, Sexton, Hardy and Mullan agreed to omit Hardy's name from any publication reporting the discovery of the Swedish mutation. They also omitted him as a co-inventor from the patent application.

AIA contends that this is not an exceptional case because the jury made no findings regarding the existence of a conspiracy or an intent to deceive the Patent and Trademark Office ("PTO") or USF. It argues that because the defendants advanced several alternative theories in support of their claim that Hardy made a substantial contribution to the

discovery of the Swedish mutation,[7] the jury's verdict on inventorship could have been based on one of these alternate theories and was not necessarily based on a finding that there was a conspiracy or that Mullan or AIA intentionally misled the PTO. AIA also argues that the jury's finding that USF did not knowingly waive its ownership rights in the Swedish mutation invention does not support a finding that AIA intentionally concealed the invention from USF because there was evidence that USF knew about Mullan's "research on the variation that became the Swedish mutation."

The evidence at trial clearly supports our findings that Sexton, Hardy and Mullan conspired to misrepresent the true inventorship of the Swedish mutation inventions in an effort to ensure that ownership of those inventions could not be claimed by Imperial College; and that they intentionally hid the discovery of the mutation from USF to avoid its claiming rights in the invention. Because these findings are not inconsistent with the jury's findings, they form a sufficient basis for us to exercise our discretion in deciding to award attorney's fees. *See Door Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1315 (Fed. Cir. 2001) (citation omitted).

AIA knew, when it brought this action, that it was not the legal owner of the patent. It devised the scheme to avoid the agreements Hardy and Mullan had with Imperial College and USF. It knew that Hardy was a co-inventor who should have been disclosed to the PTO. Despite this knowledge, it asserted that it was the rightful owner of the patent and brought this infringement action. This conduct undoubtedly constitutes bad faith.

On both factual and legal grounds, this action was objectively unreasonable. The

---

[7] The alternate theories included evidence of Hardy's position in the laboratory, role in the collaboration between him, Mullan and Dr. Lannfelt in Sweden, direction to Houlden of the initial experiments and relationship to Mullan.

deception, the planning, the execution of the scheme and the motivation of AIA, Sexton, Mullan and Hardy were hardly common or ordinary. Indeed, their conduct was rare and beyond common decency. They were motivated by ego and greed. Bringing this action was nothing more than a perpetuation of the conspiracy.

Certainly, there is a need to consider deterrence in a case like this one. Litigants must be discouraged from bringing an infringement action based upon a patent they know or should have known they do not rightfully own, especially where they defrauded the PTO and the rightful owner of the patent. Such conduct should not be rewarded and without consequences.

The compensation factor, suggested by *Fogerty* as relevant, presents an interesting issue. The jury did not determine that the defendants did not infringe the patent. It merely found that Mullan was not the sole inventor and that USF had not waived its rights in the invention. In other words, while handing the defendants a legal victory, the jury did not absolve them of infringement.

*Octane Fitness* requires us to exercise equitable discretion. There are equities on both sides. On the one hand, applying the exceptional case analysis, AIA should be held responsible for its bad faith and unreasonably bringing an action for infringing a patent that was unenforceable. On the other hand, given the unusual posture of this case, the defendants should not be rewarded for acts of infringement that may have occurred. Yet, the defendants did incur fees in determining the rightful owner of the invention. Therefore, we shall grant the motions, but will scrutinize the bills closely in light of our equitable concerns.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALZHEIMER'S INSTITUTE OF AMERICA, INC.** | : | **CIVIL ACTION** |
| **v.** | : | |
| **AVID RADIOPHARMACEUTICALS, *et al.*** | : | **NO. 10-6908** |

**ORDER**

**AND NOW**, this 30th day of March, 2015, upon consideration of Avid Radiopharmaceuticals' Motion for Attorney's Fees Under 35 U.S.C. § 285 (Document No. 302), the plaintiff's response, and after oral argument, it is **ORDERED** that the motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the amount of reasonable attorney's fees incurred by the defendant in litigating this action shall be determined after submission of the Special Master's report.

/s/Timothy J. Savage
TIMOTHY J. SAVAGE, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALZHEIMER'S INSTITUTE OF AMERICA, INC. | : | CIVIL ACTION |
| v. | : | |
| AVID RADIOPHARMACEUTICALS, et al | : | NO. 10-6908 |

**MEMORANDUM**

Savage, J. August 17, 2016

Finding that this was an "exceptional" case entitling the defendants to attorney's fees under 35 U.S.C. § 285, we granted the defendants' motions for an award of attorney's fees. Mem. Op. (Doc. Nos. 399-401). We deferred fixing the amount of the fees pending a report of a Special Master. The Trustees of the University of Pennsylvania withdrew their request for fees. Avid Pharmaceuticals ("Avid") continues to pursue its request.

Avid requested $6,867,219.31 for attorney's fees and expenses in the defense of the patent claim filed by Alzheimer's Institute of America, Inc. ("AIA"). AIA contested both the reasonableness of the time spent and the hourly rates charged.

In light of the volume of documents submitted in support of Avid's motion for attorney's fees, we appointed, with the consent of the parties, retired Judge Gene D. Cohen as Special Master ("Special Master") pursuant to Fed. R. Civ. P. 53(a)(1)(B). The appointment order directed the Special Master to prepare a Report and Recommendation regarding the amount of attorney's fees to be awarded Avid.

Judge Cohen has 44 years of litigation experience in Philadelphia in both the federal and state courts. He served 18 years as a trial judge in the Court of Common Pleas, the last five years of which were in the Commerce Court Division where he conducted and

managed complex civil litigation. He ruled on many requests for counsel fees.

After retiring from the Court, Judge Cohen was a partner in a major law firm for ten years. There, he managed and supervised complex litigation, including supervising a patent case. During his tenure, he was a billing attorney on cases and liaised with general counsel of large national corporations. He is familiar with billing rates for lawyers in and around Philadelphia.

Using his relevant experience as an attorney and judge, the Special Master reviewed 333 pages of chronological billing by the Finnegan firm, 56 pages of billing by the Pepper firm, and 13 pages of billing by the Hogan Lovells firm. He also reviewed approximately 2,500 pages of motions, memoranda and exhibits, letters and notes of testimony created or submitted in the request for attorney's fees, all opposition papers, and motions and rulings.

The Special Master conducted a settlement/mediation conference. His efforts were unsuccessful. Additionally, he held two days of hearings on general and specific objections to Avid's fee request.

The Special Master issued a Report, recommending an award of $3,943,317.70, reducing the total requested by $2,923,901.61. (Doc. No. 417).

The Special Master recommended Avid bear the cost of his fee of $63,405.00. Subsequent to issuing his report, he performed additional work in attempting to resolve the matter in light of his Report and Recommendation. He incurred an additional $8,811.00 in fees. Thus, the total Special Master's fee is $72,216.00.

Avid timely filed objections to the Report. It has since advised that we need not rule on its objections. However, it is preserving them "for the purposes of any appeal of

the case that may be taken by AIA." (Doc. No. 438)

AIA also objected to the Report and Recommendation. The objections will be overruled. The Special Master's findings are not clearly erroneous and are based on the evidence reviewed. AIA's objections to the Report were addressed in the Report with specificity. In essence, AIA contends that the Special Master did not reduce Avid's fees enough.

The Special Master requested AIA to file general and specific objections to the fee request. We approve the method he used in reviewing the fee request.

AIA contended the fee request was so excessive it should be denied in its entirety. The Special Master agreed that the request was excessive, but not outrageous, fraudulent, or unconscionable. He correctly concluded that even though a party did not act fraudulently, the request may be excessive, warranting closer scrutiny and partial rejection of the billings.

The Special Master found that Avid was justified in believing it was facing an exposure in excess of $25,000,000. Accordingly, he concluded the request was not obviously excessive. However, in light of the objection, he conducted a comprehensive analysis with greater scrutiny.

AIA criticized Avid's time entries as reflecting severe overstaffing and overbilling. Although the Special Master overruled this general objection, he examined carefully the specific objections which were raised.

AIA complained Avid's time entries reflect blatant overstaffing even on particular tasks. The Special Master agreed. He found that AIA's criticism was justified to an extent. He reduced Avid's fees accordingly.

AIA objected to Avid's rates. The Special Master found the hourly rates requested by the Finnegan firm and the Pepper firm were reasonable and within the general guidelines of rates charged by law firms in Philadelphia and nationwide. His finding is based on prevailing rates in the community.

AIA complained Avid conducted itself with excess "fact" billing on numerous occasions. The Special Master concluded this objection had merit.

The remaining general objections were more specific in nature. The Special Master determined they had some merit. He discussed them in his rulings on the specific objections. Having found most to have merit, he reduced the fee request for the amount of fees requested for the specific task complained of and recommended reduction of those fees.

As we noted, AIA essentially asserts Avid's fees should have been reduced by a greater amount. These complaints question the expert judgment of the experienced Special Master. The statements made by AIA in its objections to the Report do not justify any further reduction in Avid's fee request.

We shall overrule AIA's objections, adopt and approve the Report and Recommendation of the Special Master and enter judgment in favor of Avid and against AIA in the amount of $3,943,317.70. We shall also order Avid to pay the Special Master $72,216.00 for his service in this matter no later than August 31, 2016.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALZHEIMER'S INSTITUTE OF AMERICA, INC.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **AVID RADIOPHARMACEUTICALS, et al** | : | **NO. 10-6908** |

## ORDER

**NOW**, this 17th day of August, 2016, upon consideration of the Report and Recommendation of the Special Master (Document No. 417) filed by Honorable Gene D. Cohen as Special Master, and after a thorough and independent review of the record, it is **ORDERED** that:

1. The objections of Alzheimer's Institute of America, Inc., and Avid Radiopharmaceuticals are **OVERRULED**;

2. The Report and Recommendation of the Special Master is **APPROVED** and **ADOPTED**;

3. No later than **August 31, 2016**, Avid Radiopharmaceuticals shall compensate Judge Gene D. Cohen (retired) in the amount of $72,216.00 for his service as Special Master.

/s/ Timothy J. Savage
TIMOTHY J. SAVAGE, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALZHEIMER'S INSTITUTE OF AMERICA, INC.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **AVID RADIOPHARMACEUTICALS, et al** | : | |
| | : | **NO. 10-6908** |

**JUDGMENT ORDER**

**NOW**, this 17th day of August, 2016, in accordance with the Order dated August 17, 2016, it is **ORDERED** that **JUDGMENT IS ENTERED** in favor of the defendant Avid Radiopharmaceuticals and against plaintiff Alzheimer's Institute of America, Inc., in the amount of $3,943,317.70.

/s/ Timothy J. Savage
TIMOTHY J. SAVAGE, J.

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 15th day of November, 2016, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Charles E. Lipsey
Lawrence S. Burwell
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
11955 Freedom Drive
Reston, Virginia 20190
(571) 203-2700
charles.lipsey@finnegan.com
scott.burwell@finnegan.com

*Counsel for Appellee*

Manisha A. Desai
ELI LILLY AND COMPANY
Drop Code 1104
Lilly Corporate Center
Indianapolis, Indiana 46285
(317) 433-5333
madesai@lilly.com

*Counsel for Appellee*

Laura P. Masurovsky
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000
laura.masurovsky@finnegan.com

*Counsel for Appellee*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Appellant will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Peter C. Buckley
*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*5,130*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: November 15, 2016

/s/ Peter C. Buckley
*Counsel for Appellant*